**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JANET BUNN,

                              Plaintiff,

     v.                                     No. 05-CV-509
                                            (DRH)

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                              Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

EMPIRE JUSTICE CENTER              LOUISE MARIE TARANTINO, ESQ.
Attorney for Plaintiff
119 Washington Avenue
2nd Floor
Albany, New York 12210

HON. GLENN T. SUDDABY            WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Janet Bunn ("Bunn") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for benefits under the Social Security Act.  Bunn moves for a finding

of disability and the Commissioner cross-moves for a judgment on the pleadings.  Docket

_____

[1]Michael J. Astrue is the current Commissioner of Social Security.  He shall be
substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

Nos. 9, 13.  For the reasons which follow, the Commissioner's decision is affirmed.

## I. Procedural History

On June 24, 2002, Bunn filed an application for supplemental security income pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 47-54.[2]  That application was denied on September 11, 2002.  T. 34-38.  Bunn requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Carl E. Stephan on January 13, 2004.  T. 24, 39.  In a decision dated January 30, 2004, the ALJ held that Bunn was not entitled to supplemental security income.  T. 30-31.  On March 2, 2004, Bunn filed a request for review with the Appeals Council.  T. 19-20.  The Appeals Council denied Bunn's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 4-7.  This action followed.

## II. Contentions

Bunn contends that the ALJ erred when he failed to evaluate properly her treating physicians' opinions, determine properly her residual functional capacity, and concluded that she could perform other work that existed in the national economy.  The Commissioner contends that there was substantial evidence to support the determination that Bunn was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 6.

### III. Facts

Bunn is currently forty-four years old and has a high school education.  T. 47, 78.

Bunn previously worked as a certified nurse's assistant, knitter, and order clerk.  T. 25, 73.

Bunn alleges that she became disabled on June 24, 2002 due to back pain, insomnia,

memory loss, leg pain, and depression. T. 24, 47, 72.

### IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to

engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that

he or she is not able to do previous work or any other substantial gainful work considering

the claimant's age, education, and work experience, regardless of whether such work exists

in the immediate area, whether a specific job vacancy exists, or whether the claimant would

be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a 'severe
> impairment' which significantly limits his [or her] physical or mental
> ability to do basic work activities.  If the claimant suffers such an

3

> impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.


**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

4

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

Bunn contends that she became disabled on June 24, 2002 due to back pain, insomnia, memory loss, leg pain, and depression. T. 24, 47, 72.  On April 4, 1999, Bunn began being treated by Dr. Emily Etzkorn.  T. 169.  On July 13, 2002, Dr. Etzkorn completed an evaluation form for Bunn for the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations ("DDS") in which she concluded that Bunn was disabled due to her chronic lower back pain and depression and that she was unable to work.  T. 169-73.  In the evaluation, Dr. Etzkorn diagnosed Bunn with, inter alia, chronic lower back pain, acute major depression, palpitations, and insomnia.  T. 169.  Dr. Etzkorn also noted that Bunn could only stand/walk for less than two hours per day, sit for less than six hours per day, and had limited abilities in other physical capacities. T. 172.  In support of her findings, Dr. Etzkorn attached various laboratory findings,

5

including, inter alia, an MRI, an x-ray of Bunn's lower spine, and an echocardiogram.  T. 171, 174-82.

On September 12, 2003, Dr. Etzkorn completed an annual review of Bunn's medical condition.  T. 274-75.  Dr. Etzkorn indicated that Bunn still complained of low back pain, memory difficulties, depression, and insomnia.  Id.  She also noted that a neurologist believed Bunn was suffering from pseudo-dementia.  T. 274.  Dr. Etzkorn ordered an EKG and various other laboratory tests, all of which fell within the normal range.  T. 270-73, 275.  An x-ray of Bunn's spine was also negative.  T. 269.  In November 2003, Dr. Etzkorn completed mental and physical evaluations of Bunn's ability to perform work-related activities and concluded that she had a moderate-to-marked limitation as to her ability to appropriately respond to pressure in a typical work setting.  T. 256-61.  Dr. Etzkorn also concluded that Bunn could only stand/walk for less than two hours during an eight hour workday and should never climb, crouch, crawl, or stoop.  T. 258-59.

In an attempt to alleviate her lower back pain, Bunn was treated by various doctors at Ellis Hospital and Schenectady Anesthesia Associates from August 2001 until September 2002.  T. 197-204, 208-16, 289-90.  On May 18, 2002, Bunn was admitted to St. Mary's Hospital Mental Health Center after complaining of stress, depression, and insomnia.  T. 185, 189-90.  Dr. Barbara Davis, a psychiatrist, noted that Bunn was depressed and insistent that she return home.  T. 190.  On May 20, 2002, Bunn left the hospital against medical advice.  T. 183-84.

6

**B. Treating Physician's Rule**

Bunn contends that the ALJ erred when evaluating the medical evidence from her treating and primary physician, Dr. Etzkorn.[3]

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination

---

[3] Although Bunn contends that the ALJ failed to accord proper weight to the medical opinions of her treating physicians, her brief only addresses the ALJ's analysis of one of her treating physicians, Dr. Etzkorn.  See Pl. Mem. of Law (Docket No. 9) at 16-20.

of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34;

see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

Here, the ALJ afforded little weight to Dr. Etzkorn's medical opinions because "she

[was] not an orthopedist specialist and her findings [were] not well supported by objective

findings."  T. 27.  The ALJ also noted that Dr. Etzkorn's reports primarily concerned Bunn's

subjective complaints.  Id.  The ALJ concluded that "[a]lthough it is reasonable to conclude

that the claimant is precluded from the performance of heavy and even medium exertional

level work activity, it is unreasonable to conclude that [Bunn] was so severely restricted

from lifting, carrying, sitting, standing and walking as described by Dr. Etzkorn."  Id.  In

support of his conclusion, the ALJ cited the various MRI and x-ray results that revealed only

mild degenerative changes in Bunn's condition.  T. 27, 174, 177, 201-02, 269, 280.

Further, although Dr. Etzkorn indicated that the etiology of Bunn's back pain was believed

to be secondary to spondylolysis[4] and degenerative disc disease, she noted that the

question of spondylolysis had yet to be proven.  T. 274.  Thus, substantial evidence existed

supporting the ALJ's rejection of Dr. Etzkorn's opinion as controlling and the ALJ properly

accorded her opinion little weight.

Therefore, the Commissioner's determination on this ground is affirmed.

### C. Residual Functional Capacity

Bunn contends that the ALJ improperly evaluated her residual functional capacity

_____

[4]Spondylolysis is the degeneration or deficient development of a portion of the
vertebra. See Stedman's Medical Dictionary 1678 (27th ed.2000).

("RFC") for light work and ability to perform jobs that exist in significant numbers in the national economy.  See Pl. Mem. of Law at 20-24.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see also 20 C.F.R.  §§ 404.1545, 416.945 (2003).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § § 404.1545, 416.960 (2003).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560© (2003).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003).  The ALJ may apply the Grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan,  168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the

9

criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations."  Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)).  Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Bapp, 802 F.2d at 604-05.  Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity.  Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  20 C.F.R. § 404.1569a(c)(1)(vi) (2003).  The applicability of the Grids should be considered on a case-by-case basis.  Bapp, 802 F.2d at 605.  However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Id. at 603.

Here, the ALJ found that Bunn was unable to perform her past relevant work but possessed the RFC to perform light work.  T. 24-25, 30-31.  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b) (2003).

10

The ALJ used the Grids to determine if other work existed in the national economy that Bunn could perform.  See T. 22.  The ALJ concluded that Bunn had the RFC

> to perform light work activity which requires lifting up to 20 pounds occasionally, sitting, standing and walking up to six hours in an eight-hour workday, which work does not require constant contact with others

T. 31.  Bunn contends that the ALJ's conclusion is not supported by substantial evidence. In support of his conclusion regarding Bunn's physical capabilities, the ALJ cited the reports of Drs. Aaron Colman and Robert Leupold.  T. 25.  On August 29, 2001, Dr. Colman examined Bunn and noted that her reflexes were normal and she had full and equal strength.  T. 25, 204.  On February 27, 2002, Dr. Leupold noted that Bunn was able to squat down and up without problems, could walk on her heels and toes, and had full strength in her lower extremity.  T. 25, 202.  Further, as discussed supra, various MRI and x-ray results revealed only mild degenerative changes in Bunn's condition.  T. 27, 174, 177, 201-02, 269, 280.  Moreover, Bunn testified that she drove every day, watched television, took care of her six children, and performed chores around the house.  T. 30.  As to Bunn's mental capabilities, the ALJ cited the medical opinion of Dr. Annette Payne, a licensed psychologist, that Bunn's psychiatric difficulties were mildly to moderately limiting.  T. 29, 220.  Dr. Payne also concluded that Bunn could follow and understand simple directions and could consistently perform simple tasks.  T. 29, 219.  Thus, there is substantial evidence to support the ALJ's finding that Bunn retained the residual functional capacity to perform light work.

Bunn also contends that Bunn's non-exertional impairments precluded the ALJ's reliance on the Grids when determining her ability to perform work in the national economy and that he should have used a vocational expert to establish what, if any, work Bunn could perform.  See Pl. Mem. of Law at 23-24.  At the time of the ALJ's decision, Bunn was forty years old.  T. 30.  The ALJ also noted that Bunn had a high school education and unskilled past relevant work experience.  Id.  Further, as discussed supra, the ALJ determined that Bunn was capable of performing light work activity.  Id.  Thus, the ALJ concluded that the Grids provided a framework which required a finding that Bunn was not disabled.  Id.  Although Bunn contends that her non-exertional impairments required the ALJ to consult the opinion of a vocational expert, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Bapp, 802 F.2d at 603.  Therefore, substantial evidence supports the ALJ's reliance on the guidelines in finding that Bunn was not disabled.

Therefore, the Commissioner's determination on this ground is affirmed.


## VI. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the decision denying supplemental security income benefits be **AFFIRMED**, Bunn's motion for a finding of disability (Docket No. 9) be **DENIED**, and the Commissioner's cross-motion (Docket No. 13) be **GRANTED**.

DATED: March 30, 2007
      Albany, New York

_David R. Homer_

United States Magistrate Judge